## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

**SHIARIUS MCKINNEY**,

      Plaintiff

                                      Case No.
                                      Hon.

**CHIEF OF POLICE TODD BETTISON,**
**OFFICER JOHN DOE,**
**and THE CITY OF DETROIT**

      Defendant

---

**MAURICE DAVIS (P76203)**
The Davis Law Group PLLC
*Attorney for Plaintiff*
1300 Broadway Ste 220
Detroit, MI 48226
P: (313) 818-3238 F: (248) 286-6004
maurice@michiganinjurylawyer.com

---

*There is no other pending or resolved civil action arising out of the same
transaction or occurrence alleged in the complaint*

---

### COMPLAINT AND JURY DEMAND

**NOW COMES**, Plaintiff, SHIARIUS MCKINNEY, through her attorneys,

Davis Law Group PLLC, for her complaint against the defendants, Detroit Police

Officer, John Doe ("Officer Doe"), Chief of Police Todd Bettison ("Chief Bettison"),

and the City of Detroit ("Detroit"), states:

1. This is a civil action arising under common law avenues and 42 U.S.C. § 1983 and 1988 seeking compensatory damages, punitive damages, and attorney fees stemming from Defendants' violations of Plaintiffs rights guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States.

## JURISDICTION AND VENUE

2. Plaintiff restates the allegations contained in paragraph 1, above.

3. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, 1367(a), and § 1341.

4. Venue is proper under 29 U.S.C. § 1391(b).

5. The incident giving rise to this action occurred in the City of Detroit, County of Wayne, State of Michigan.

6. At all times relevant, Defendant Officer Doe is a City of Detroit Police Officer who acted under color of state law and is a "person" for purposes of a 42 U.S.C. § 1983 action.

7. Moreover, Defendant Officer Doe acted under color of laws, statutes, ordinances, regulations, policies, customs, and usages of the State of Michigan.

PARTIES

8. Plaintiff restates the allegations contained in paragraphs 1 through 7, above.

9. Plaintiff, Shiarius McKinney, is and has been during all relevant times a resident of the County of Wayne, State of Michigan, and was the owner of a 3-year-

old Mura-Bully called Diamond. Plaintiff and Diamond resided in Detroit, Michigan at the time the dog was shot and killed.

10.    Defendant Officer Doe was a duly appointed and sworn as a police officer working for the Detroit Police Department. Defendant Officer Doe is a named defendant in his individual capacity.

11.    Defendant Chief of Police Todd Bettison ("Chief Bettison") was at all times relevant to this complaint duly appointed and sworn as the Detroit Police Department's Chief of Police. He is a named defendant in his individual capacity.

12.    Defendant City of Detroit is a governmental entity and municipality incorporated under the laws of Michigan for purposes of liability under 42 U.S.C. § 1983.

13.    Defendant City of Detroit operates, manages, and controls the Detroit Police Department ("DPD") and enforces local and state law through the DPD.

14.    Defendant Chief Bettison was employed by the Defendant City of Detroit and was responsible for the oversight, supervision, discipline, and training of DPD personnel, including Defendant Officer Doe.

15.    Defendant City of Detroit employed and was responsible for oversight, supervision, discipline, and training of DPD personnel, including Defendant Officer Doe and Defendant Chief Bettison.

16.     Defendant City of Detroit is the body responsible for DPD's official policies and practices as well as DPD's unofficial customs and practices with respect to use of force, de-escalation, and DPD's interactions with dogs belonging to members of the community.

17.     All the events described in this complaint occurred in the City of Detroit and the State of Michigan.

## FACTUAL ALLEGATIONS

18.     Plaintiff restates the allegations contained in paragraphs 1 through 17 above.

19.     At the time of the incident described in this complaint, plaintiff owned an approximately 3-year-old Mura-Bully female dog named Diamond. Exhibit 1, Diamond.

20.     Diamond was a sweet, loving, playful dog. She was beloved by her family and was a good girl.

21.     Diamond had no history of biting, aggression or otherwise being dangerous to humans or animals.

22.     She was known to be relaxed, calm, playful and friendly.

23.     Diamond was considered a member of Plaintiff's family.

24.     On February 26, 2026, DPD executed a search warrant on Plaintiff's home in connection with a felonious assault, in Detroit, Michigan

25.     Upon the officers' approach, Plaintiff informed officers that her son was in one room, and her dog was secured behind a closed door in her daughter's room and was not aggressive.

26.     Plaintiff and a plumber who was conducting a maintenance visit at the time of the incident were taken out of the house and placed in handcuffs.

27.     Plaintiff's son remained in the house, sitting on the couch not far from the door and bedroom entrance.

28.     Officers, having entered the property and with knowledge of Diamond's presence behind the closed door, opened said door.

29.     At the opening of the door, Diamond ran out of the room, attempting to reach Plaintiff who was restrained on the porch.

30.     Officers shot Diamond several times in the head and body.

31.     Diamond died almost immediately.

32.     Because Diamond was attempting to run out of the house, her body remained inside of the home while her head lay across the threshold.

33.     The shooting occurred in the house and was witnessed by Plaintiff's son who sat only a short distance away.

34.     Plaintiff could not see the shooting, but heard it, and saw Diamond once she fell at the threshold.

35.     Diamond's skull was pierced causing her brain-matter to become exposed.

36.    No arrest was made as a result of the search warrant.

37.    Plaintiff suffered a severe anxiety attack during the incident.

38.    Plaintiff's son suffered a bruise on his leg, resulting from contact with a spent casing, indicating his proximity to the shooting.

## COUNT I

### UNLAWFUL SEIZURE VIOLATION OF CIVIL RIGHTS 42 U.S.C. § 1983 AND FOURTH AMENDMENT AGAINST THE DEFENDANT OFFICER JOHN DOE AND DEFENDANT CHIEF BETTISON FOR COMPENSATORY DAMAGES, PUNITIVE DAMAGES AND ATTORNEY'S FEES

39.    Plaintiff restates the allegations contained in paragraphs 1 through 38, above.

40.    The Fourth Amendment of the Unites States Constitution, U.S. Const. amend. IV, prohibits the government from unreasonably destroying or seizing a citizen's property.

41.    "The destruction of property by state officials poses as much of a threat, if not more, to people's right to be 'secure .. .in their effects' as does the physical taking of them." Fuller v. Vines, 36, F.3d 65, 68 (9th Cir. 1994).

42.    Shooting a "dog is a destruction recognized as a seizure under the Fourth Amendment and can constitute a cognizable claim under § 1983." Id.

43.    Citizens have a Fourth Amendment property right in their pets under the United States Constitution. San Jose Charter of the Hell's Angels Motorcycle Club

v. City of San Jose, 402 F.3d 962, 977-78 (9th Cir. 2005); Brown v. Battle Creek Police Department, 844 F.3d 556,

568 (6th Cir. 2016).

44.     Additionally, the Sixth Circuit has determined that an individual has a property right in their pets. Brown, 844 F.3d at 567.

45.     Dogs are more than just a personal effect. San Jose, 402 F.3d at 975 (holding that defendant police's shooting of plaintiff's dogs was an unreasonable seizure.).

46.     The emotional attachment to a family's dog is not comparable to a possessory interest in furniture. Brown, 844 F.3d at 565, quoting San Jose, 402 F.3d at 975.

47.     Indeed, plaintiff's Fourth Amendment interests involved are substantial because "the bond between a dog owner and W pet can be strong and enduring," and plaintiff thinks

of Diamond "in terms of an emotional relationship, rather than a property relationship." Altman

v. City of High Point, NC,  330 F.3d 194, 205 (4th Cir. 2003).

48.     The Sixth Circuit has determined that "the use of deadly force against a household pet is reasonable only if the pet poses an [imminent] danger and the use of force is unavoidable." Brown, 844 F.3d at 565 (emphasis added) (quoting Villo v. Eyre, 547 F.3d 707, 710 (7th Cir. 2008) (holding that the unreasonable killing of a companion dog constitutes a seizure under the Fourth Amendment).

49. In circumstances where, as here, the dog did not pose an imminent threat, and therefore, the shooting of the dog was an unreasonable seizure.

50. Defendant Officer Doe's actions described herein were intentional, grossly negligent, amounted to reckless or callous indifference to plaintiff's constitutional rights.

51. Defendant Officer Doe's seizure of plaintiff's dog, Diamond, was objectively unreasonable under the totality of the circumstances and therefore constituted an unreasonable seizure under the Fourth Amendment.

52. Defendant Officer Doe's shooting of Diamond was more intrusive than necessary.

Florida v. Royer, 460 U.S. 491, 504 (1983) ("A seizure becomes unlawful when it is 'more intrusive than necessary'").

54. It is clearly established that the unreasonable killing of a dog constitutes an unconstitutional seizure of personal property under the Fourth Amendment. Brown, 844 F.3d at 567.

55. Defendant Officer Doe's shooting of plaintiff's dog, Diamond, was an objectively unreasonable killing of Diamond because Diamond was not barking or making any threatening gestures, such as growling, showing his teeth, or lunging towards Defendant Officer Doe.

56. In fact, Diamond attempted to move past officers to reach Plaintiff.

57.    Before Diamond could reach Plaintiff, Officer Doe shot her multiple times killing instantly, in front of Plaintiff's son and within earshot of the Plaintiff.

58.    Defendant Officer Doe shot Diamond for no reason at all. Defendant Officer Doe was not in any imminent danger that would have justified the use of deadly force. Fuller v. Vines, 36 F.3d 65 (9th Cir. 1994).

59.    Moreover, plaintiff informed Defendant Officer Doe when arriving at the scene that Diamond was her dog and was not aggressive.

60.    A police officer may not "destroy a pet when it poses no immediate danger and the owner is looking on, obviously desirous of retaining custody."

61.    Under 42 U.S.C § 1983, plaintiff is entitled to an award of compensatory damages against Defendant Officer Doe in his individual capacity, which includes "damages for the emotional distress suffered by plaintiff. .. and any other injury that is the result of... the unlawful seizure of plaintiff's dog." Moreno v. Hughes, 157 F.Supp.3d 687,692 (E.D. Mich. 2016).

62.    Defendant Officer Doe's actions were reckless, showed callous indifference toward the rights of plaintiff, and were taken in the face of a perceived risk that the actions violated federal law.

63.    Moreover, Defendant Chief Bettison had a duty to train and supervise Defendant Officer John Doe.

64. Defendant Chief Bettison failed to reasonably train and supervise DPD officers, including Officer John Doe, in specific issues related to encountering citizens' dogs in the field, despite the obvious need to do so.

65. Defendant Chief Bettison knew or should have known that their failure to adequately supervise and train DPD officers in such issues relating to encountering citizens' dogs in the field was likely to harm individuals such as plaintiff; it was reasonably foreseeable that their failures in these areas would cause the harm or a similar harm that plaintiff has suffered, is suffering, and will suffer.

66. In failing to reasonably train and supervise DPD officers, including Defendant Officer Doe, in such issues relating to citizens' dogs, Defendant Chief Bettison caused plaintiff to be subjected to the deprivation of his right to be secure in his person against unreasonable seizures as guaranteed by the Fourth Amendment to the U.S. Constitution.

67. Defendant Chief Bettison's actions and omissions violated plaintiff's federal constitutional rights and were a substantial and significant contributing cause and proximate cause of plaintiff's damages.

68. Under 42 U.S.C. § 1983, plaintiff is entitled to an award of compensatory damages against Defendant Officer Doe and Defendant Chief Bettison, in their individual capacity, in order to punish them and to deter others.

69.     Under 42 U.S.C. § 1988, plaintiff is the prevailing party in this litigation, then he will be entitled to receive an award of reasonable attorney's fees, non-taxable expenses, and costs.

## COUNT II
## UNLAWFUL SEIZURE VIOLATION OF CIVIL RIGHTS 42 U.S.C. § 1983 AND FOURTH AMENDMENT AGAINST THE DEFENDANT CITY OF DETROIT FOR COMPENSATORY DAMAGES,. PUNITIVE DAMAGES AND ATTORNEY'S FEES

70.     Plaintiff restates the allegations contained in paragraphs 1 through 69, above.

71.     Defendant City of Detroit is liable for the acts and omissions of its agents and/or employees, and for the herein described acts by the individual defendants, who were acting within the scope and course of their employment.

72.     Defendant City of Detroit is a governmental entity and municipal incorporated under the laws of Michigan for purposes of liability under 42 U.S.C. § 1983 and the Detroit Police Department is a department of the City of Detroit. Defendant City of Detroit enforces local and state law through its law enforcement agency, the Detroit Police Department ("DPD").

73.     Defendant City of Detroit is responsible for the promulgation of policies, customs, practices, and training of DPD personnel, including Defendant Officer Doe and Defendant Chief Bettison.

74.     Defendant City of Detroit employs and is responsible for the oversight, supervision, discipline, and training of DPD personnel, including Defendant Officer Doe and Defendant Chief Bettison.

75.     Defendant City of Detroit is the body responsible for DPD's official policies and practices as well as DPD's unofficial customs and practices with respect to use of force, de-escalation, and DPD's interactions with dogs belonging to members of the community.

76.     Defendant City of Detroit's unconstitutional policies, practices, and customs, or lack thereof, were the driving force and proximate cause of the damages that plaintiff suffered.

77.     Therefore, Defendant City of Detroit utterly failed to properly hire, train, and supervise Defendant Officer Doe and Defendant Chief Bettison with regard to the use of force, de-escalation, and interactions with dogs belonging to members of the community.

78.     Defendant City of Detroit exhibited deliberate indifference to the rights of others when it failed to properly hire, train, and supervise Defendant Officer Doe with regard to the use of force, de-escalation, and interactions with dogs belonging to members of the community.

79.     Defendant City of Detroit's failures showed a deliberate choice by Defendant City of Detroit when it had other alternatives to choose from that would

have protected the rights of others. City of Canton v. Harris, 489 U.S. 378, 389 (1989).

80. Defendant City of Detroit directly and proximately caused the death of plaintiffs dog, Diamond, because it failed to adequately and properly hire, train, and supervise Defendant Officer Doe with respect to his control, or lack thereof, of its use of force, de-escalation, and interactions with dogs belonging to members of the community.

81. The importance of proper training, hiring, and supervision is so necessary and important for the safety of the public and other dogs that willful disregard for such proper training, hiring, and supervision can reasonably be determined to have been deliberately indifferent to such a vital need.

82. Office Defendant Officer Doe, the damages to plaintiff and the constitutional violations of Defendant Officer Doe would not have occurred.

83. Under 42 U.S.C. § 1983, plaintiff is entitled to an award of compensatory damages against Defendant City of Detroit.

84. Under 42 U.S.C. § 1988, plaintiff is the prevailing party in this litigation, then he will be entitled to receive an award of reasonable attorney's fees, non-taxable expenses, and costs.

## COUNT III
## COMMON LAW AND/OR STATUTORY  CONVERSION CHATTELS

85. Plaintiff restates the allegations contained in paragraphs 1 through 84, above.

86. Conversion is "any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein." Foremost Ins. Co. v. Allstate Ins. Co., 439 Mich. 378, 486 (1992).

87. On February 26, 2026, Defendant Officer Doe had unlawfully taken and asserted exclusive dominion and control over plaintiff's dog, Diamond, when he shot and killed the dog.

88. That by needlessly and wrongfully shooting and killing plaintiff's dog, Defendant Officer Doe's actions were a distinct act of dominion wrongfully exerted over plaintiffs dog in denial of or inconsistent with his rights.

89. The acts described above constitute an unlawful conversion of plaintiff's property, resulting in damages of plaintiffs' possessory rights of her dog.

90. Defendants' acts set forth above constitute statutory conversion under MCL 600.2919a.

91. Defendant's acts set forth above constitute the wrongful and unlawful exertion of dominion and control by Defendant Officer Doe over plaintiff's interest in the dog, inconsistent with the possessory rights of plaintiff's property, under the common law of the State of Michigan.

92. MCL 600.2919a provides the following:

(1) A person damages as a result of either or both of the following may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees:

(a) Another person's stealing or embezzling property or converting property to the other person's own use.

93.     Pursuant to MCL 600.2919a(l)(a), plaintiff is entitled to costs and actual attorney fees wrongfully sustained in bringing this action.

## COUNT IV INTENTIONAL  INFLICTION OF EMOTIONAL DISTRESS

94.     Plaintiff restates the allegations contained in paragraphs 1 through 93, above.

95.     Defendant Officer Doe's shooting and killing plaintiff's dog, Diamond, Defendant Officer Doe exhibited extreme and outrageous conduct.

96.     Defendant Officer Doe intentionally and/or recklessly shot Plaintiffs dog, Diamond.

97.     Defendant's actions caused plaintiff severe emotional distress, so severe that no reasonable person could be expected to endure it, including without limitation, sever horror, grief, and anger over the shooting of Diamond, nausea, inability to eat, loss of sleep, inability to concentrate among others. Haverbush v. Powelson, 217 Mich. App. 228, 234-35 (1996).

98.     Defendant Officer Doe's conduct was so outrageous in character, and so extreme in degree, that it went beyond all possible bounds of decency.

99.     Defendant Officer Doe's shooting and killing of plaintiff's dog, Diamond, Defendant Officer Doe's actions are regarded as atrocious and utterly intolerable in a civilized community.

## COUNT V  GROSS NEGLIGENCE

100.    Plaintiff restates the allegations contained in paragraphs 1 through 99, above.

101.    Gross negligence means "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a).

102.    At all relevant times, Defendant Officer Doe was employed as a police officer by Defendant City of Detroit and owed a duty to plaintiff to act with ordinary care and to act as would a reasonably prudent police officer under the same or similar circumstances.

103.    At all relevant times, Defendant Officer Doe further owed a duty to plaintiff and to all others similarly situated, to exercise due care and caution in the discharge of his police duties, to follow the policies and procedures established by Defendant City of Detroit for the safe use and operation of Defendant Officer Doe's weapon.

104.    February 26, 2026, Defendant Officer Doe was engaging in the exercise or discharge of a governmental function on behalf of the Detroit Police Department executing a search warrant at Plaintiff's residence.

105.    Contrary to such duties, Defendant Officer Doe breached the above duties and all other applicable duties and thereby was grossly negligent, reckless, and/or guilty of willful and wanton misconduct. Defendant Officer Doe's actions were reckless and demonstrated a substantial lack of concern as to whether injury or death resulted, thereby subjecting Defendant Officer Doe to liability under Michigan statutes.

106.    Defendant Officer Doe's wrongful conduct includes but is not limited to the following:

a.      Improper use of unreasonable, unnecessary and deadly force when neither plaintiff or plaintiff's dog, Diamond, posed no imminent threat of harm to any person, including Defendant Officer Doe.

b.      Failure to property handle and/or maintain a police gun at all times to prevent it from discharging in the vicinity of innocent persons and civilians;

c.      Recklessly and intentionally shooting plaintiffs dog, Diamond, when Diamond did not pose an imminent threat to any person, including Defendant Officer Doe;

d.      Any and all additional acts of gross negligence and/or willful misconduct as may come to be known through the course of this lawsuit.

107.    Therefore, Defendant Officer's Doe conduct amounts to gross negligence and is the direct or proximate cause of plaintiff's injuries and damages.

## REQUEST FOR RELIEF

**THEREFORE,** plaintiff respectfully requests this Court enter judgment in their favor and against defendants, and award plaintiff all relief as allowed by law and equity, including but not limited to:

A.    Actual economic damages as established at trial;

B.    Compensatory damages, including but not limited to those for past and future pecuniary and non-pecuniary losses, physical and mental pain, trauma, fear, anxiety, loss of enjoyment of life, loss of liberty, loss of sense of security, and other non-pecuniary losses;

C.    Punitive and exemplary damages for all claims as allowed by law in an amount to be determined at trial;

D.    Issuance of an Order mandating appropriate equitable relief, including but not limited to:

  I.    Issuance of a formal apology from each defendant to plaintiff;

  II.    The imposition of appropriate policy changes designed to avoid future similar misconduct by defendants;

  III.    Mandatory training designed to avoid and prevent future similar misconduct by defendants;

IV.     Imposition of disciplinary action against appropriate employees of

City of Detroit and Defendant Officer Doe;

E.      A judgment in favor of plaintiff and against the defendants for costs,

attorney's fees, and interests wrongfully sustained in having to bring this action

pursuant to MCL 600.2919a(l)(a) and 42 U.S.C. § 1988;

F.      Any other relief that justice requires.

Respectfully submitted,

**THE DAVIS LAW GROUP**
*/s/ Maurice Davis*
**Maurice Davis (P76203)**
*Attorney for Plaintiff*

DATED : Wednesday, June 3, 2026

## JURY DEMAND

**NOW COMES** Plaintiff by and through his attorneys, Maurice C. Davis and

The Davis Law Group , and hereby demands a trial by jury in the above cause of

action.